**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

NATHAN A. COOK
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

Date Submitted: May 3, 2024
Date Decided: May 14, 2024

Ethan H. Townsend
Daniel T. Menken
Ryan D. Konstanzer
McDermott Will & Emery LLP
1000 N. West Street, Suite 1400
Wilmington, DE 19801

Kelly A. Green
Jason Z. Miller
Smith, Katzenstein & Jenkins LLP
1000 N. West Street, Suite 1501
Wilmington, DE 19801

RE:     *Biocomposites GmbH, f/k/a ARTOSS GmbH v. Artoss, Inc.*
        C.A. No. 2023-1189-NAC

Dear Counsel:

On April 19, 2024, I delivered my ruling denying the parties' cross motions

for preliminary injunction (the "Ruling").[1]     On April 26, 2024,

Defendant / Counterclaim-Plaintiff Artoss, Inc. ("Artoss"), moved for partial

reargument under Court of Chancery Rule 59(f) (the "Motion").[2]  For the reasons

below, I deny the Motion.

## I.     BACKGROUND

On April 1, 2015, Plaintiff / Counterclaim-Defendant Biocomposites GmbH

("GmbH"), formerly known as ARTOSS GmbH, and Artoss entered into an

---

[1] *Biocomposites GmbH, f/k/a ARTOSS GmbH v. Artoss Inc.*, C.A. No. 2023-1189-NAC, Docket ("Dkt.") 113 ("Ruling").

[2] Dkt. 105 ("Def.'s Mot.").

agreement for Artoss to distribute GmbH's products in North America (the "Distributor Agreement").[3]  The Distributor Agreement granted GmbH significant rights, including "the right, in its sole discretion, to modify the [territory in which Artoss may distribute GmbH's products] upon ninety (90) days written notice to [Artoss]."[4]

On October 29, 2015, GmbH and Artoss amended the Distributor Agreement ("Amendment 1").  Amendment 1, a one-page document, gave Artoss the right to distribute Putty 2.0, a product that was in the development stages.[5] On September 19, 2023, GmbH purported to exercise its right to modify unilaterally the territory in which Artoss could distribute GmbH's products.[6] This litigation followed, with both parties requesting that I enjoin the other party from selling GmbH's products.

## II.  ANALYSIS

"On a motion for reargument, the movant bears a heavy burden."[7]  "Rule 59 relief is available to prevent injustice and will be granted only when the moving

---

[3] Dkt. 1 at Exhibit 1.

[4] *Id.*

[5] *Id.* at Exhibit 3 ("Amendment 1").

[6] *Id.* at Exhibit 2.

[7] *Neurvana Med., LLC v. Balt USA, LLC*, 2019 WL 5092894, at *1 (Del. Ch. Oct. 10, 2019).

party demonstrates that the court's decision 'rested on a misunderstanding of a material fact or a misapplication of law.'"[8] "Where a motion for reargument 'merely rehashes arguments already made by the parties and considered by the Court when reaching the decision from which reargument is sought, the motion must be denied.'"[9] "It is appropriate to deny a motion for reargument where the explicit language in the Court's challenged decision implicitly rejects an argument offered or request made by the movant."[10] "A motion for reargument 'may not be used to relitigate matters already fully litigated or to present arguments or evidence that could have been presented before the court entered the order from which reargument is sought.'"[11]

Artoss asserts that this Court "misapprehends Artoss's position on the contractual interpretation of Amendment #1" and "overlooks the case law holding that discretion (when it exists) gives rise to the implied covenant, and that it must

---

[8] *In re ML/EQ Real Estate P'ship Litig.*, 2000 WL 364188, at *1 (Mar. 22, 2000) (quoting *Arnold v. Soc'y for Sav. Bancorp,* C.A. No. 12883, at 1 (Del. Ch. June 30, 1995)).

[9] *Nguyen v. View, Inc.*, 2017 WL 3169051, at *2 (Del. Ch. July 26, 2017) (quoting *Wong v. USES Hldg. Corp.*, 2016 WL 1436594, at *1 (Del. Ch. Apr. 5, 2016)).

[10] *Neurvana*, 2019 WL 5092894, at *1.

[11] *Bocock v. Innovate Corp.*, 2022 WL 17101448, at *1 (Del. Ch. Nov. 22, 2022) (quoting *Standard Gen. Master Fund L.P. v. Majeske*, 2018 WL 6505987, at *1 (Del. Ch. Dec. 11, 2018)).

be exercised reasonably and in good faith."[12]

The Motion fails for several reasons. First, the Ruling did not overlook or misapprehend the law or record. In the Ruling, I explained why Artoss is not reasonably likely to prevail on its breach of contract claim based on the record presented. In summary, Artoss's suggested interpretation of Amendment 1 seems inconsistent with both the plain text of the Distributor Agreement and its amendments, as well as the contemporaneous evidence the parties put forward following fairly intensive expedited discovery.

The plain text of Amendment 1 provides, in Section 2, that the Putty 2.0 distribution rights are being acquired "under the terms of the [Distributor] Agreement" and, in Section 6, that the amendment "will be governed by and construed in accordance with the terms of the [Distributor] Agreement."[13] In other words, Amendment 1 seemingly makes clear the parties' agreement that, although the scope of covered products was being expanded to include Putty 2.0, Artoss's distribution of Putty 2.0 would still be governed by, and subject to, the Distributor Agreement. And this included the very first term in the Distributor Agreement—GmbH's territory modification right in Section 1.1.[14]

---

[12] Def.'s Mot. at 1–2.

[13] Ruling at 14–15 (quoting Amendment 1 §§ 2, 6).

[14] *Id.* at 16–17 ("[T]his is also not a right that was hidden in the depths of a thousand-page agreement. The disputed right is found in Section 1.1, the very

Notwithstanding this, Artoss suggested during oral argument that what appears to be a short boilerplate provision in the one-page document prohibiting modifications of Amendment 1 except in writing signed by the parties actually reflected the parties' implicit revocation of GmbH's territory modification right. As I explained in the Ruling, that is an enormous amount of weight to place on a very thin reed, bending it well past the breaking point.[15]

As I also explained in the Ruling, even if I were to consider extrinsic evidence here, Artoss fares no better. The evidentiary record suggests a near-total absence of contemporaneous documentation supporting Artoss's position.[16] Instead, the contemporaneous record includes an email among the principals of Artoss indicating that even Artoss, at least when discussing the matter internally, treated the modification right as distinct from the parties' amendments to the Distributor Agreement, including Amendment 1.[17] The contemporaneous record

---

first section of the relatively short Distributor Agreement.").

[15] *Id.* at 20.

[16] *Id.* at 17.

[17] *Id.* at 18–19 ("It is further significant that this contemporaneous email is between Cassidy and Byerley, when they were seemingly being candid, and their subsequent proposal to expressly remove the modification right was not approved."); Dkt. 75 at Exhibit 30. As the foregoing parenthetical notes, Artoss soon thereafter proposed an amended and restated distributor agreement that specifically omitted the territory modification right. But GmbH did not approve it.

otherwise appears to be bereft of references to the modification right following execution of the Distributor Agreement.[18]  As I discussed in the Ruling, GmbH's territory modification right strikes me as both unusual and powerful in the context of an exclusive distributor relationship.[19]  Artoss asks me to believe that the parties revoked GmbH's right without providing a scrap of contemporaneous writing on the matter other than a debatably Delphic reference to modification in Amendment 1.  Far from suggesting the parties negotiated and reached a meeting of the minds to extract the modification right from the parties' relationship, the absence of contemporaneous discussion of the right or its cancellation strongly suggests the opposite to me.[20]

---

[18] Ruling at 17.

[19] *Id.* at 13.

[20] During oral argument, Artoss's counsel suggested that, notwithstanding the meager contemporaneous record, Artoss would prove its case via its principals' live testimony at trial.  Dkt. 104 at 89.  Maybe so, but "ask[ing] me to enter a preliminary injunction based on future trial testimony that [Artoss] says will convince me of the correctness of its position, but that has not yet occurred[,]" was, to state the obvious, a bridge too far.  Ruling at 20–21.  Ironically, perhaps, deposition testimony from Cassidy and Byerley seems, at this stage, to cut against Artoss.  In depositions in separate litigation, Cassidy and Byerley seemed to understand that GmbH possessed a contractual right under the Distributor Agreement to restrict unilaterally Artoss's distribution territory to "Alaska."  *Id.* at 17.  GmbH argues that testimony should be accorded particular weight because Section 1.1 was not a point of dispute between the parties at the time Cassidy and Byerley gave the testimony.  *Id.* at 17–18.  To be clear, Artoss vigorously contests drawing any such conclusions from the testimony, but, if anything, it seems clear to me that no injunction is warranted at this stage.

It would be one thing for Artoss to dispute the foregoing. But that is not the route Artoss takes with the Motion. Instead, Artoss appears to assert an entirely new argument in the Motion that Artoss did not make in support of its preliminary injunction motion. Specifically, Artoss now asserts that Amendment 1 granted Artoss new rights that are independent from, and untethered to, GmbH's rights under the Distributor Agreement. First, and perhaps most obviously, a party cannot use a motion for reargument as a vehicle to advance new arguments and theories. This alone is reason to deny the Motion as to Artoss's breach of contract claim.

Second, in delivering the Ruling, I was under no misimpression as to whether the Amendment 1 gave Artoss rights to sell Putty 2.0. That is frankly hard to miss in the one-page document. Yet, again, also hard to miss is the fact that the rights are *expressly* granted "under the terms of the [Distributor] Agreement" and are to "be governed by and construed in accordance with the terms of the [Distributor] Agreement."[21] The plain text of Amendment 1 shows that, consistent with the document's title, Amendment 1 is an "amendment" to the Distributor Agreement. Amendment 1 appears to make a relatively small change to the Distributor Agreement, namely adding a product to Artoss's exclusive distribution roster, while also making unequivocally clear that the

---

[21] Amendment 1 §§ 2, 6.

Distributor Agreement supplies the terms of that distribution relationship. Besides being a new argument that is an improper subject of a reargument, Artoss's assertion that Amendment 1 reflects a new, independent agreement among the parties is contradicted by the plain terms of Amendment 1. That would seem to be true no matter how much twisting and contorting Artoss may strain to pursue, and it certainly does not cause me to reconsider my conclusion that Artoss has not demonstrated a reasonable probability of success on the merits.

I next turn to Artoss's contention that "[t]he Ruling minimally addresses Artoss's arguments concerning breach of the implied covenant of good faith and fair dealing."[22] It is correct that the Ruling did not discuss Artoss's implied covenant claim at the same length as Artoss's breach of contract claim. But I noted in the Ruling that Artoss's counsel also gave the implied covenant claim short shrift at oral argument. Surprisingly, Artoss now suggests that it did not have enough time at the preliminary injunction hearing to present its implied covenant argument at length. Artoss's assertion is misguided, given that Artoss's counsel alone presented argument for approximately two hours during a hearing that was originally scheduled for ninety minutes.

In any event, the Ruling addressed the implied covenant claim in a manner consistent with the limited attention Artoss gave to the argument, the claim's

---

[22] Def.'s Mot. at 9.

conflict with the record, and the difficulty of succeeding on the claim at trial. The implied covenant is to be used sparingly, particularly among sophisticated parties to a contract. Prevailing on an implied covenant claim is not a walk in the park, even with a supportive record.

Artoss seeks to prove at trial that GmbH exercised its contractually permitted discretion arbitrarily or in bad faith. But the record before me is hardly supportive of Artoss's implied covenant claim, at least at this stage. I therefore could not conclude Artoss was reasonably likely to show GmbH acted in an arbitrary manner in exercising its contractually permitted discretion to reduce Artoss's territory. As I explained, the record "includes ample evidence that Artoss performed for years substantially below forecasts and expectations in terms of sales and sales revenue."[23]

I understand that Artoss now blames others, including GmbH, for its failure to achieve its forecasts for nearly a decade. And there is always the possibility I could reach a different conclusion at trial, after further discovery and seeing witnesses testify live. But it is no stretch to say Artoss will have significant difficulty showing the territory reduction was arbitrary or undertaken in bad faith for implied covenant purposes after years of failing to achieve forecasted sales.[24]

---

[23] Ruling at 22–23.

[24] I discuss above that Artoss's principals seemingly understood GmbH's ability to reduce Artoss's territory to Alaska. Notably, far from leaving Artoss

This, then, is not a circumstance to issue a preliminary injunction on an implied covenant claim.  At this preliminary injunction stage, I am, accordingly, under no misimpression as to the law or record in this regard.

GmbH suggests that the Motion warrants fee-shifting. As the Chancellor observed in denying a motion for reargument in *Twitter, Inc. v. Musk*, "[a] court makes rulings, not proposals for the parties to counter.  Defendant['s] approach wastes judicial and litigant resources."[25]  Although Artoss's Motion comes close to the line, I decline to shift fees.

### III.   CONCLUSION

For the foregoing reasons, Artoss's motion for reargument is denied.

Sincerely,

*/s/ Nathan A. Cook*

Nathan A. Cook
Vice Chancellor

---

with Alaska, GmbH purported to reduce Artoss's territory from North America to California, Arizona and Nevada.  Dkt. 1 at Exhibit 2.  As GmbH's counsel points out, Artoss has both historical sales and future growth opportunities in these three states, especially with California alone standing as the fifth largest economy in the world.  Dkt. 104 at 27.

[25] 2022 WL 4298178, at *2 (Del. Ch. Sept. 19, 2022).